**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------X

AEDEN KAMADOLLI,

*Plaintiff*,

-against-

THE CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT ("NYPD") OFFICER SASKYA RODRIGUEZ, AND NYPD JOHN OR JANE MEMBER DOES 1-5.

*Defendants*.

--------------------------------------------------------------------------------X

Case No.:

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff AEDEN KAMADOLLI, by his attorneys, COHEN&GREEN P.L.L.C. and Kelly Jo Popkin, hereby complain of Defendants as follows:

## BACKGROUND

1. Since October 2023, protests erupted around the world, including in New York City, demanding an end to the genocide in Gaza, an end to U.S. funding for military aid to Israel, and full divestment of all universities from funds supporting Israel.

2. The New York City Police Department ("NYPD") has responded with aggressive uses of force against such protesters, in an effort to deter protesters from speaking out against the ongoing genocide in Gaza. Among other brutal tactics, NYPD officers have commonly restrained pro-Palestine protesters with flex-cuffs in such a manner that caused them unnecessary pain and suffering and, in some cases, possible serious and long-term nerve damage.

3. Plaintiff AEDEN KAMADOLLI, a Columbia student and human rights advocate, is one such protester. While peacefully attending a teach-in at Butler Library, Plaintiff was

restrained with excruciatingly tight flex-cuffs in such a manner as to cause lasting pain and physical injury. He brings this suit to vindicate his constitutional right to be free from excessive force and related New York state law claims.

**PARTIES**

4. At all times mentioned herein, Plaintiff AEDEN KAMADOLLI was a resident of New York County in the City and State of New York.

5. At all relevant times mentioned herein, Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

6. Defendant NYPD Officer Saskya M. Rodriguez (Tax I.D. Number 961196, Badge No. 17123, Command 217), was employed by the City of New York as an NYPD officer at all relevant times mentioned herein.

7. NYPD Members John and Jane Does 1-5 are collectively referred to herein at the "Doe Defendants." Doe Defendants were employed by the City of New York as members of the NYPD. Some of their true names, as noted throughout this Complaint, are currently unknown to Plaintiff.

8. At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

9. Each and all of the acts and omissions of the Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City of New York.

10. Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City of New York who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City of New York, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

11. Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

12. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

13. Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

14. Each individual Defendant is sued in her or his individual and official capacities.

## JURISDICTION AND VENUE

15. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

16. Venue is proper pursuant to 28 U.S.C. § 1391, et seq., in the Southern District of New York, where the Plaintiff and Defendant City of New York reside, and where the majority of the actions complained of herein occurred.

17. Plaintiff timely served his Notice of Claim on the municipal Defendant and complied with all conditions precedent to commencing an action under state law.

18. At least thirty days have elapsed since service of Plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

19. This action has been initiated within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York State Law.

## STATEMENT OF FACTS

### I. The Butler Library Protest

20. Plaintiff is a student at Columbia University. On May 7, 2025, Plaintiff was participating in a teach-in at Butler Library on Columbia University's campus, located at or around 535 West 114th Street in New York, NY.

21. At this teach-in, Plaintiff and his fellow students were discussing the topic of Palestinian liberation and the history of Palestine. The teach-in was nonviolent and respectful.

22. At around 7 p.m., members of the NYPD arrived at the library and, along with Columbia campus police, detained Plaintiff and other participants of the teach-in without warning or justification.

23. Members of the NYPD and Columbia campus police began to shout at the students assembled at Butler Library and guarded the exits to the facility so that no student could enter or exit.

24. Plaintiff heard no order to disperse by the NYPD and was presented with no opportunity to leave on his own accord. Without warning, NYPD officers violently grabbed multiple protesters and began to handcuff them.

25. Plaintiff was grabbed by Defendant Officer Rodriguez, who handcuffed him behind his back with flex-cuffs in an exceedingly tight fashion.

26. Officer Rodriguez observed Plaintiff to be holding a tote bag but did not remove this bag prior to handcuffing him. Once Plaintiff was cuffed, Plaintiff's tote bag slid down from his shoulder onto his bound wrists.

27. The tote bag bore significant weight on Plaintiff's flex-cuffs, causing significant pain to Plaintiff's wrists, back and arms, as well as pressure to the already-tight cuffs.

28. Officer Rodriguez then grabbed Plaintiff by his arm and pulled him to a line of other arrestees waiting to be escorted out of the library and transported to the police precinct for processing. Though Plaintiff's bag was weighing heavily upon Plaintiff's flex-cuffs, Officer Rodriguez did not adjust Plaintiff's cuffs or remove Plaintiff's bag, allowing Plaintiff to continue to suffer the pain of the exceedingly tight cuffs.

29. On information and belief, John/Jane Does 1-5 also observed Plaintiff's arrest and witnessed Plaintiff's tote bag bearing weight on his bound wrists but failed to intervene and address this clear risk of harm and physical injury to his wrists.

30. Plaintiff's cuffs were not adjusted or removed until after he was transported to One Police Plaza. In that extended period of time, Plaintiff was worked to endure severe pain in his wrists, back, and shoulders from the pressure of his tote bag on his cuffs.

31. As a direct result from his exceedingly tight cuffs, Plaintiff has sustained injuries to his wrists. For months after this incident, Plaintiff experienced wrist stiffness and limited wrist

mobility that substantially impacted his quality of life. The weakness in Plaintiff's wrists have lasted to this very day.

32. His injuries were directly and proximately caused by the deliberate indifference of municipal policymakers, who were aware that demonstrators had repeatedly been injured by the NYPD's use of plastic handcuffs when policing protests, but failed to train, instruct, discipline, or supervise NYPD officers to ensure the proper application of flex-cuffs to avoid causing injury.

**II. The NYPD's History of Excessive Force Used at Protests**

33. The excessive use of force suffered by Plaintiff here is part of the NYPD's long history of aggressive and unconstitutional policing of certain protests, including multiple pro-Palestine protests and Black Lives Matter protests.

34. Following NYPD conduct during these and other protests, the City of New York and the NYPD and its members have been sued repeatedly by protesters who alleged that they had been subject to unlawful uses of force, much in the same manner as have the Plaintiff in this case.

35. In many of these cases Defendants employed tactics developed and modified over the course of many years by Defendant City of New York and its policymakers at and in connection with other demonstrations in the City dating back to around 2000 and continuing through the present, including the policy of using excessively-tight plastic handcuffs complained of herein:

a. *Moussa et al. v. City of New York,* 1:25-cv-00442 (S.D.N.Y. March 15, 2025) (lawsuit arising from a October 21, 2023 Palestine protest alleging, *inter alia*, that members of the NYPD engaged in policing motivated at least in part by discrimination against Pro-Palestinian protesters and that members of the NYPD used exceedingly tight plastic handcuffs causing lasting injuries to protesters);

b. *Makkawi et al. v. City of New York*, 1:26-cv-04018 (E.D.N.Y. August 1, 2025) (class action of pro-Palestine protesters alleging, *inter alia*, that NPYD officers

physically restrained protesters with flex-cuffs in such a manner that caused serious and long-term nerve damage);

c. *Sow v. City of New York*, 21-cv-533, ECF No. 49, at ¶ 469 (S.D.N.Y. Mar. 6, 2021) ("In many cases, Plaintiffs and/or other arrestees complained about the fact that their flex-cuffs were too tight and/or causing them injury.") (class action regarding the excessive force used against Black Lives Matter protesters resulting in a $13.7 million class-action settlement);

d. *Burley v. City of New York*, 03-cv-2915 (WHP)(FM) 2005 WL 668789 (S.D.N.Y. March 23, 2005) (class action arising from mass arrests of over 200 demonstrators during a 2002 protest in New York City challenging, *inter alia* the policy and practice of using plastic flex cuffs as unreasonable and excessive because of the manner in which the handcuffs were applied and the length of time for plaintiffs were handcuffed);

e. *Kunstler v. City of New York*, 04-cv-1145 (RWS)(MHD) (S.D.N.Y.) and other related cases arising from alleged false and retaliatory arrests in connection with police responses to protests on April 7, 2003, raising *Monell* and other claims similar and related to the policies and practices complained of herein such as using extremely tight plastic handcuffs in their arrest;

f. *MacNamara v. City of New York,* 275 F.R.D. 125, 154 (S.D.N.Y. 2011) (certifying six "mass arrest subclasses" as well as an "Excessive Detention Class" comprised of all RNC arrestees who were processed pursuant to the RNC Mass Arrest Processing Plan and a "Conditions of Confinement Class, comprising all RNC arrestees who were handcuffed with plastic flex cuffs");

g. Multiple investigative reports have similarly documented the use of exceedingly tight flex-cuffs by the NYPD. *See, e.g.,* New York City Dep't of Investigation, *Investigation into NYPD Response to the George Floyd Protests*, (Dec. 2020) at 42, *available at* https://www.nyc.gov/assets/doi/reports/pdf/2020/DOIRpt.NYPD%20Reponse.%20GeorgeFloyd%20Protests.12.18.2020.pdf ("Those arrested frequently complained that their flex-cuffs were too tight and caused pain or damage—with some alleging long-term nerve damage—to their wrists or hands."); New York State Office of the Att'y Gen., New York City Police Department's Response to Demonstrations Following the Death of George Floyd at 29 (June 2020), *available at*https://ag.ny.gov/sites/default/files/2020-nypd-report.pdf ("Several witnesses testified that officers zip tied their wrists so tightly that they lost feeling in their arms and hands and that officers refused their requests for assistance."); NYCLU, *Arresting Protest* at (April 2003), *available at* https://www.nyclu.org/sites/default/files/publications/nyclu_pub_arresting_protest.pdf (describing how NYPD officers were aware of the excessive tightness of plastic handcuffs used on protesters but refused to remove them during a large scale protest of the Iraq war in February 2003); NYCLU, *Rights and Wrongs at*

*the RNC* (2005) at 34-35, *available at* https://www.nyclu.org/sites/default/files/publications/nyclu_pub_rights_wrongs_rnc.pdf (noting that NYCLU received 50 complaints of the misuse of plastic flex-cuffs during the protests of the Republican National Convention, leading to multiple injuries); The Global Justice Clinic at the New York University School of Law and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice at Fordham Law School, *Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street*, at 43-44, 78-80 (July 25, 2015), *available at* http://hrp.law.harvard.edu/wp-content/uploads/2013/06/suppressing-protest-2.pdf (describing flex-cuff injuries during Occupy Wall Street) (hereinafter "*Suppressing Protest*").

36. In these cases and others, those uses of force were in contravention of, or inconsistent with, related, written NYPD policies and/or training. *Suppressing Protest* at 44 (noting NYPD training requires periodic checks to ascertain that arrestees' "extremities receive an adequate amount of blood" and that the tightness of cuffs should be checked to ensure adequate circulation when applied).

37. In many cases, Defendant City of New York failed to document, and/or require that NYPD officers document, such uses of force in accordance with related NYPD policies and/or training.

38. Although Defendant City of New York, by and through its policymakers, actually knew, or should have known, that NYPD members were engaging in or had engaged in the unconstitutional conduct complained of herein, they failed to monitor, supervise, and/or discipline NYPD members who directed, engaged in, or observed such conduct.

39. Despite the wealth of evidence of NYPD members' historical brutality against protesters through the use of excessively tight plastic cuffs, Defendant City of New York has ignored, and/or failed to utilize, relevant information, including information gleaned from reports and lawsuits, as well as other data points, to identify deficiencies in NYPD training as it relates to the constitutionally compliant use of these handcuffs.

40. Defendants' failure to train, which led to violations of Plaintiff's rights in this case, include *inter alia,* the failure to provide training on the proper application and removal of flex-cuffs, including how to measure the appropriate tension on flex cuffs; how to assess the need to remove flex-cuffs; how long flex-cuffs may be worn before a significant risk of nerve damage develops; the safest types of flex-cuffs to use (for example, flex-cuffs with a double-locking feature and padding); and other topics related to the use of flex-cuffs.

## FIRST CLAIM FOR RELIEF

**Excessive Force**

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***
**(Against Defendant Rodriguez and Doe Defendants)**

41. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

42. Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

43. Having witnessed the excessive use of force on Plaintiff, Doe Defendants had a duty to intervene and failed to do so.

44. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

45. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

**Municipal Liability**

***Pursuant to 42 U.S.C. 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***
**(Against Defendant City of New York)**

46. Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

47. The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, but not limited to: uses of excessive force; using flex-cuffs for protest-related arrests, while failing to loosen or remove over-tight cuffs; and subjecting arrestees to lengthy detentions and lengthy detentions and arrest processing at centralized arrest processing locations, exposing them to extended periods of time cuffed with exceedingly tight handcuffs, in lieu of brief street detentions.

48. All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to: (a) formal policies, rules, and procedures of Defendant City; (b) actions and decisions by Defendant City's policymaking agents; (c) customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City of New York and its policymaking officials; (d) Defendant City of New York's deliberate indifference to Plaintiff's rights secured by the Fourth and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described herein.

49. The injuries in this case were therefore directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant City of New York, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are handcuffed using flex-cuffs.

## THIRD CLAIM FOR RELIEF

**Violations of New York State Law**
***Pursuant to the New York State Constitution and New York State Common Law***
**(Against Defendant Rodriguez and Defendant City of New York)**

50. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

51. The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

**Violations of the New York State Constitution**

52. Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, § 12 of the New York State Constitution.

53. A damages remedy here is necessary to effectuate the purposes of Article I, § 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under this section.

**Assault and Battery**

54. Defendants committed assault within the meaning of New York common law against Plaintiff by intentionally placing Plaintiff in fear of imminent harmful or offensive contact.

55. Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

56. Defendants did thereby inflict assault and battery upon Plaintiff.

**Negligent Training and Supervision**

57. The acts and conduct of the police officials were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

58. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

59. Upon information and belief, Defendant City supervised, and trained the police officials described above.

60. The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City of New York, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City of New York is liable to Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the

City of New York as follows:

i. Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii. Actual damages in an amount to be determined at trial against the City of New York;

iii. Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988 and New York common law; and

iv. Such other relief as the Court deems just and proper.

Dated: New York, New York
August 5, 2026

Respectfully submitted,

**KELLY JO POPKIN, PLLC**

***/s/ Kelly Jo Popkin***
Kelly Jo Popkin
60-84 Catalpa Ave
Ridgewood, NY 11385
Email: kelly.jo.popkin@gmail.com
Tel.: 917-648-0838

**GIDEON ORION OLIVER**

277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

BY: ____________________
Elena L. Cohen

J. Remy Green

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
e: elena@femmelaw.com
remy@femmelaw.com